INTERNATIONAL FORWARDING CO., INC. *v.* UNITED STATES

**No. 5197.**—Invoice dated Reutlingen, Germany, May 4, 1939.
Entered at New York May 18, 1939.
Entry No. 846518.

Third Division, Appellate Term

(Decided April 7, 1941)

*B. A. Levett* for the appellant.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the appellee.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., concurring

KEEFE, Judge: This is an application for review of the finding of the trial court, sitting in reappraisement, involving the United States value of certain paper tubes imported from Germany. The paper tubes were entered and appraised upon the basis of the United States value and it is conceded by the parties hereto that such is the proper basis of appraisement. This case was tried by the lower court at the same time as reappraisement 131995–A involving identically the same kind of merchandise and the merchandise herein was shipped from Germany on the date of entry of the merchandise in that case. The paper tubes in this case were appraised at the same United States value as in reappraisement 131995–A decided concurrently herewith. There, however, the importer deducted an item of 8 per centum profit from the United States selling price to obtain his United States value, which the appraiser disallowed. Here, no such deduction was made, but in entering the merchandise the importer deducted 25 per centum countervailing duty from the United States value, which the appraiser

also disallowed. Therefore a different question is presented herein. The importer in this case is the Adolff Bobbin Co., Inc., and W. E. Mayer, who testified in the previous proceedings, also testified here and the testimony adduced in that case was incorporated and made a part of the record herein.

The paper tubes in this case were purchased from the German manufacturer with reichsmarks deposited in German banks as the result of the sale of cotton and copper which the importer purports to have purchased through agents in the United States, shipped to Germany, and sold there through agents to certain consumers thereof. Through such financial transactions the importer was able to acquire Reichsmarks for approximately 30 cents rather than at the regular rate of exchange of 40 cents, and thereby a profit of approximately 25 per centum was made. The witness testified that in making entry on the basis of the United States value he deducted 25 per centum of the invoice value, equal to the amount of duty he would be called upon by the collector to deposit to cover a levy of bounty under the provisions of section 303 of the Tariff Act of 1930, and Department letter T. D. 49821; that in selling the merchandise imported in this case the selling prices were identical with the prices of other prototype merchandise sold here at the time of exportation of the instant merchandise and there was no change made on account of the imposition of the 25 per centum countervailing duty; and that upon the basis of the money expended a small profit was realized.

Counsel for the importer contends that the term "allowance made for duty," as used in the definition of United States value in subsection (e) of section 402 of the Tariff Act of 1930, includes all duties levied against such imported merchandise as were assessed upon prototype merchandise at the time of shipment of the instant paper tubes.

The Government, on the other hand, contends that the allowance to be made for duty refers only to regular duties levied under the various schedules of the Tariff Act of 1930 as assessable on all importations of a particular class of merchandise, and was not intended to contemplate the deduction of any special duties levied against any particular importations, such as marking duties, or additional duties for undervaluation, or countervailing duties. It is further contended that the importer has failed to prove the amount of countervailing duty assessed on prototype previously imported paper tubes which were offered for sale in the United States on the date the paper tubes in question were exported from Germany.

The trial court held that the 25 per centum deposit exacted by the collector was in the nature of security for the possible imposition of a countervailing duty under section 303 and is not applicable to all paper tubes imported from Germany, being confined only to such merchandise where it is indicated that bounties or grants were being

made by the German government, and further that the importer failed to establish that upon the importation of identical merchandise at the time of exportation of the merchandise herein a deposit was demanded or any countervailing duty imposed and collected upon the liquidation of such merchandise. Therefore the United States value of the merchandise was held to be the value as returned by the appraiser.

From a careful consideration of the evidence we are unable to find that the importer has established that cotton and copper were actually purchased in the United States, exported to Germany and there sold to German manufacturers using such raw materials, and that the proceeds of the actual sales of any particular shipments of cotton and copper were used in the purchase of the particular paper tubes the subject of importation herein. From all that appears in the evidence these transactions in copper and cotton may be entirely fictitious and merely a scheme whereby American purchasers of German merchandise are enabled to receive subsidies in commodities purchased for the trade in the United States. At all events, through the methods outlined, the importer was able to purchase German goods at a reduction of at least 25 per centum. True, counsel for the importer admits that the importer bought cotton and copper, shipped it to Germany, sold it through an agent in that country who deposited the proceeds to the credit of the American importer of paper tubes, and that such proceeds were used in the purchase of the paper tubes in question. Counsel's admissions of the facts to be proven, however, do not establish the transaction as bona fide.

The Tariff Act of 1930 provides in title I, section 1, for the levy, collection, and payment of duties upon all articles imported from any foreign country at the rates of duty which Congress has prescribed in the various schedules and paragraphs of the dutiable list of the act, and under section 503 it is further provided that the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the entered value or the final appraised value, whichever is higher. In section 402 Congress has provided four different methods through which the value to be used as a basis for the assessment of duty upon ad valorem merchandise may be determined, to wit, foreign value or export value, whichever is the higher, or if such values may not be satisfactorily ascertained, the United States value, if one exists, or the cost of production. The United States value is defined in section 402 (e) as the price at which such or similar imported merchandise is freely offered for sale in the principal market of the United States to all purchasers at the time of exportation of the imported merchandise with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, less allowances for profit and

general expenses not to exceed 8 per centum for each. In other words, Congress has provided that in case the foreign or export value of imported merchandise cannot be determined then as a basis for the assessment of duty the value to be used as a guide shall be the United States value derived from the United States selling price of prototype merchandise, packed ready for delivery, upon the date of shipment of the imported goods, less allowances for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, less profits not to exceed 8 per centum and a reasonable allowance for general expenses not to exceed 8 per centum on purchased goods. The value finally derived as equalling the United States value represents a price stripped of all charges added thereto since the merchandise left its place of shipment in the foreign country including any duty accruing at the time of importation into the United States.

The manufacturer of these paper tubes receives for his merchandise the same price in reichsmarks whether reichsmarks are purchased at the prevailing rate of exchange of 40 cents or at some lesser sum through price controls of the German Government established to encourage exports. Through the so-called cotton and copper method of obtaining advantageous exchange rates for reichsmarks the importer is able to obtain paper tubes for a less amount than purchasers in Germany. Where there is no means of determining a foreign or export value for merchandise and the United States value is required to be used as a measure for the assessment of duties upon imported merchandise, Congress evidently foresaw situations arising where through exchange controls foreign governments would be able to sell their merchandise in the United States at less than the home consumption prices and the United States Government would be unable to control such undervaluation to the detriment of our own markets under the basis prescribed for assessments of duty upon ad valorem goods. Therefore section 303 was enacted to meet such a situation.

Section 303 provides as follows:

SEC. 303. COUNTERVAILING DUTIES.

*Whenever any country*, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel, or corporation *shall pay or bestow, directly or indirectly, any bounty or grant upon the* manufacture or production or *export of any article or merchandise manufactured or produced in such country*, dependency, colony, province, or other political subdivision of government, *and such article or merchandise is dutiable under the provisions of this Act, then upon the importation of any such article or merchandise into the United States*, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, *there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed.* The

Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated. The Secretary of the Treasury shall make all regulations he may deem necessary for the identification of such articles and merchandise and for the assessment and collection of such additional duties. [Italics not quoted.]

In accordance with section 303 the Secretary of the Treasury promulgated T. D. 49821, giving notice to collectors of customs and others concerned that goods imported from Germany which were acquired by or through the disposal of other goods on a premium basis were subject to the provisions of section 303; and that dutiable merchandise imported from Germany shall be subject to a collection of *estimated countervailing duties at the rate of 25 per centum of the invoice value*, in addition to any other duty, and the liquidation of entries covering such merchandise shall be suspended and the facts concerning the manner of payment for such goods shall be reported to the bureau.

When Congress provided for assessment of duties upon the basis of the entered or appraised value, whichever is higher, assessment thereon is taken at the rates prescribed in the various schedules of the act. We are of the opinion that the duties to be deducted in determining the United States value refer only to such as would be assessed upon the amount determined to be the dutiable value, to wit, the total entered or appraised value whichever is higher. Were this not true, there would be no uniformity in the assessment of duty upon any of the various classes of merchandise, particularly when the United States value is to be taken as a basis for the assessment of duty, because the United States selling price of prototype merchandise might have been entered at too low a price and advanced by the appraiser so that each percentage of advance would be subject to an additional duty by reason of undervaluation, or the prototype merchandise might not have been properly marked and a 10 per centum marking duty might have been levied thereon, or in case the merchandise consisted of antique furniture which could not be authenticated as to its antiquity such would be subject to a duty of 25 per centum in addition to any other duty imposed by law. None of these additional duties, however, are such customs duties as accrue at the time goods are imported into the United States, but become assessable after importation because of conditions other than the nature of the merchandise itself. Consequently we are of the opinion that the only duty deductible from the United States selling price in order to determine the United States value upon imported merchandise is the duty accruing thereon upon importation and payable at the rates prescribed in the various schedules and paragraphs of the dutiable list of the Tariff Act of 1930, upon the basis of the entered or appraised value which-

ever is higher, and that such assessments have no application to duties based upon the invoice value.

However, there is also another consideration entering into the situation now before us, to wit, there is no evidence in the record that a countervailing duty has ever been definitely determined as having been assessed upon prototype merchandise offered for sale or sold in the United States at the time of the shipment in question. In fact, there is no proof that the collector has made any liquidation of entries of prototype merchandise, or that the Secretary of the Treasury has ascertained or determined or estimated the net amount of any such bounty or grant and so declared the same in order that the collector may fix the amount of the countervailing duty upon liquidation.

In the case of *Faunce* v. *United States*, 25 C. C. P. A. 131, T. D. 49245, the reappraisement under consideration involved certain imported matches appraised upon the basis of the United States value. The importers claimed that the excise tax imposed under the provisions of section 612 of the Revenue Act of 1932 at the rate of 2 cents per 1,000 matches, and included in the appraised value, was double taxation and should not have been included in the dutiable value.

The court in holding that the tax was properly a part of the appraised value stated:

The tax imposed by section 612, *supra*, undoubtedly accrues when matches as sold by an importer.

Customs duties accrue at the time goods are imported into the United States.

It might be argued with some plausibility that as customs duties accrue at the time merchandise is imported into the United States, they are a necessary expense from the place of shipment in a foreign country to the place of delivery in the United States. However, the Congress did not so regard them, and, in section 402 (c), *supra*, specially provided that an allowance should be made for customs duties, as distinguished from "cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery."

If customs duties are not a necessary expense, within the purview of the language of the statute under consideration, it certainly is not reasonable to suppose that the Congress ever contemplated that internal-revenue taxes, which might not accrue for years after the delivery of imported merchandise, should be considered a necessary expense from the place of shipment of imported merchandise to the place of its delivery.

For the reasons stated we find no error in the decision and judgment of the trial court holding that the United States value of the paper tubes in question is the value returned by the appraiser. The judgment of the trial court is therefore affirmed.

CONCURRING OPINION

EVANS, Judge: I concur in the result reached by my colleagues in this case for the reason that there is no proof of sales of prototype merchandise between the dates of April 23, 1939, the effective date

of T. D. 49821, and the date of exportation of the instant merchandise, May 4, 1939. Therefore importer has failed to sustain its burden of proving that the countervailing duty, which it claims is deductible from the invoice price in order to arrive at United States value, was deposited on any entry of prototype goods previously imported, and there is, therefore, no sale of such goods upon which to base the computation of United States value of the merchandise now before us.